MATTHEW B. MOCK (SBN 316380)
matthew.mock@afslaw.com
OSCAR A. FIGUEROA (SBN 313238)
oscar.figueroa@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401

JONATHAN JUDGE (*PHV* forthcoming)
jonathan.judge@afslaw.com
**ARENTFOX SCHIFF LLP**
233 South Wacker Drive, Suite 1700
Chicago, IL 60606
Telephone: 312.258.5500
Facsimile: 312.629.5600

Attorneys for Defendant
ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| JULIE CHENG a.k.a. JULIE XINGZHOU CHENG a.k.a. XINGZHOU CHENG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP, a Chinese limited partnership,<br><br>Defendant. | Case No. 8:25-cv-01553-MRA-JDE [Related Case No. 8:23-cv-02059-MRA-JDE]<br><br>**DEFENDANT ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP'S OPPOSITION TO PLAINTIFF JULIE CHENG'S *EX PARTE* APPLICATION TO STAY ENFORCEMENT OF JUDGMENT**<br><br>Judge: Hon. Mónica Ramírez Almadani<br><br>Ctrm: 6A |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 5

II. RELEVANT FACTUAL BACKGROUND .......... 7

A. Cheng's Husband, Philip Zhang, Has Admitted to Fabricating Financial Records in Discovery and Backdating Them. .......... 7

III. ARGUMENT .......... 9

A. Cheng has Failed to Exhaust the Required Procedures for Contesting a Bank Levy, Much Less Through a Separate Case. .......... 9

B. Cheng has Not Satisfied the Standard for *Ex Parte* Relief .......... 10

C. Cheng Seeks a Preliminary Injunction, But Fails to Acknowledge or Satisfy the Relevant Legal Standard .......... 12

IV. CHENG FAILS TO SUBSTANTIATE HER EXTRAORDINARY REQUEST WITH EVIDENCE. .......... 13

V. SANCTIONS ARE APPROPRIATE .......... 15

VI. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Imperial Bank v. Pim Elec., Inc.*, 33 Cal.App.4th 540 (1995) ........ 9

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ........ 11

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) ........ 9, 11

*In re Mix*, 14 Cal.3d 604 (1975) ........ 13

*Sierra Forest Legacy v. Rey*, 577 F.3d 1015 (9th Cir. 2009) ........ 11

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ........ 11

**Statutes**

Cal. Civ. Code § 703.520 ........ 8

Cal. Civ. Code § 720.000 ........ 8

Cal. Civ. Code § 3439 ........ 13

Cal. Evid. Code § 662 ........ 12

Cal. Family Code § 851 ........ 13

Cal. Family Code § 910(a) ........ 12

Cal. Family Code § 2581 ........ 12

**Other Authorities**

Fed. R. Civ. P. 62 ........ 10

FED. R. CIV. P. 69 ........ 9

Local Rule 5-3.2 ........................................ 9

Uniform Voidable Transfer Act ........................................ 6, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Julie Cheng brings an improper *ex parte* application, in which—weeks before Defendant Zhuhai Dingfu Phase I Industrial Energy Conservation Investment Fund, LP ("Dingfu") is even required to appear by the parties' agreement—Ms. Cheng asks the Court to effectively grant her all the relief she seeks through this action. Ms. Cheng's application is procedurally defective for several reasons, and even if it were not, she utterly fails to make any substantive showing that would entitle her to the extraordinary relief she seeks. This is Ms. Cheng's and her husband Philip Zhang's third attempt—and second *ex parte* attempt—to stay Dingfu's right to collect on the nearly $4.8 million judgment issued by this Court. The Court properly denied the two prior attempts, and the Court should deny this deficient application as well.

In the related action Dingfu filed against Zhang, No. 8:23-cv-02059-MRA-JDE (the "Zhang Action") which has been pending before this Court since late 2023, Dingfu has served discovery on Zhang and Cheng, along with their related business entities and the trust they established (the "Family Trust"). All these entities have largely refused to cooperate in discovery, refusing to produce highly relevant information. Much of the information Zhang produced came only after Dingfu was forced to move to compel. The numerous other entities (Cheng, the Family Trust, the Trustee, and Cheng's LLC, Central Irvine Investment) have largely stonewalled.

Despite that, Dingfu has been able to discover considerable information about Zhang's and Cheng's web of entities and the devices they have tried to employ to evade collection efforts. Specifically, discovery has shown that Zhang and Cheng have created two business entities and the Family Trust, and used those entities in an illegitimate attempt to shield their assets from creditors. Cheng and Zhang have failed to observe required corporate and trust formalities, have commingled assets, and have moved money—large six-figure amounts—between and among these entities at will.

And most troubling, Zhang was forced to admit under oath in his July 18, 2025 debtor examination that he created false evidence in the Zhang Action. To give the false appearance that the large cash transfers between and among the Zhang/Cheng entities were genuine, Zhang admitted that after receiving Dingfu's document requests in January 2025, he created financial records that purported to show multiple transactions that occurred in 2021 and 2024, and then falsely backdated them to appear as though they were created at the time the supposed transactions occurred. Zhang then produced those documents in discovery without revealing that they were created in 2025. Making matters worse, the false transactions were supposedly "capital contributions" to Zhang's business, JCAE Group, Inc., and purported to document loans made by Cheng or the Family Trust, to JCAE. But JCAE's corporate records did not reflect that many of these capital contributions were ever made. This evidence leads to the inference—supported by Zhang's admissions—that the loans were never genuine, and that the documents were falsified to give cover to voidable or fraudulent transfers. Of particular note here, Plaintiff Cheng is the Chief Financial Officer of JCAE Group.

Zhang produced these records as Adobe PDFs, which lack any metadata or electronically stored information that would show when the capital contribution or loan documents were created. Three weeks ago, Dingfu asked Zhang to produce original ESI for all the documents he has produced, so that it can see the document creation dates, and see if other documents were forged. No ESI has been produced to date.

Dingfu's investigation is continuing, but it all appears to be a sham. Dingfu anticipates bringing counterclaims against Cheng for her direct and knowing participation, individually and as JCAE's CFO, in a scheme to unlawfully conceal and hide assets to subvert this Court's enforcement procedures.

As we explain below, Cheng's application should be denied due to a host of procedural errors and because it is substantively baseless. At bottom, Cheng's request

seeks to shortcut the due process guaranteed to Dingfu, deny it discovery, and grant her all the relief she seeks, relief that is indistinct from a preliminary injunction. Moreover, the record is far too detailed and complex to be resolved on an *ex parte* basis with 24 hours' notice, before any discovery has been had.

The Court should summarily deny the Application and allow the case to proceed through routine discovery, so that Dingfu can uncover any further evidence that Zhang or Cheng falsified their financial information.

## II. RELEVANT FACTUAL BACKGROUND

### A. Cheng's Husband, Philip Zhang, Has Admitted to Fabricating Financial Records in Discovery and Backdating Them.

In the Zhang Action, Cheng's husband, Philip Zhang, received large (six-figure) payments from the Family Trust and from Cheng, supposedly over a period of years. These payments showed that Zhang and Cheng were commingling their assets and those of the Family Trust, using the Family Trust to fund their personal living expenses and Zhang's business JCAE Group, and funneling money into JCAE in a further attempt to unlawfully shield assets from creditors. Ms. Cheng is the Chief Financial Officer of JCAE Group. These actions show that Zhang's and Cheng's efforts to conceal and hide assets violate the Uniform Voidable Transfer Act and possibly constitute financial fraud. At the very least, they demonstrate that Zhang and Cheng have unclean hands that warrant denial of the equitable relief Cheng seeks here.

In an apparent attempt to head off such claims, Zhang produced in discovery records that appeared to show these payments were for capital contributions to Zhang's business, JCAE Group. But Zhang was forced to admit in his debtor examination to fabricating those records, and then backdating them, in some cases by years, with the obvious intent to make them appear as though they had been created before the Zhang Action began. Specifically, Zhang and Cheng testified that these large payments were merely "loans" made by Cheng or the Family Trust to

Zhang and/or their business JCAE Group. (Mock Decl. Ex. 2 at 118:25-119:5.)

Zhang then created false "Capital Contribution" documents that purported to document these loans as though they were legitimate capital contributions. Zhang admitted in his debtor examination that the capital contribution documents <u>did not exist</u> before this case. Zhang created them only after Dingfu served discovery requests in the Zhang litigation in early 2025.

> Q. Now, the rest of the Capital Contribution Statements that are reflected in Exhibit 8, and that is through -- Bates 058 through 062, these were all created by you in or about the time that you received our document requests in this litigation; is that right?
>
> A. **Yes.**

(Mock Decl. Ex. 2 at 113:19-25.) Zhang testified that he used records and information held by Ms. Cheng, JCAE's CFO, to create the records in 2025. (Mock Decl. Ex. 2 at 109:9-110:4.)

He then falsely backdated them to 2021 and 2024, including falsifying the dates on which they were supposedly signed, to make it appear as though they were created and signed at the time of the supposed earlier capital contributions. (Mock Decl. Ex. 2 at 113:1-16, 114:1-5.) He admitted this:

> Q. It was backdated?
>
> A. **Okay. Yeah.**
>
> Q. And that's true of every Capital Contribution Statement that is shown here in Exhibit 8; correct?
>
> A. **Correct.**

(Mock Decl. Ex. 2 at 114:6-18.)

Even more telling, Zhang then admitted that JCAE's financial books and records—which are the province of the company's CFO, Plaintiff Julie Cheng—<u>did not show</u> that JCAE received any capital contribution in 2021, the date when the falsified and backdated documents purportedly showed a very large loan from Cheng

for a capital contribution. (Mock Decl. Ex. 2at 118:25-119:22.) On top of that, while this case was pending before this Court, Cheng supposedly made several additional loans, totaling an even larger amount, to Zhang, again to be used as capital contributions to JCAE Group. But JCAE's books and records showed contributions of only about one-fifth the amount shown on the Capital Contribution Statements, a major discrepancy that Zhang could not explain. (Mock Decl. Ex. 2 at 119:23-120:22.)

There is much more discovery to be done, and it is difficult to reconcile Zhang's and Cheng's conflicting testimony and unsupported financial assertions. But given what we already know about Zhang's willingness to falsify evidence—and specifically to create evidence intended to make Zhang and Cheng's commingling of assets appear to be legitimate, there is serious reason to doubt the authenticity of other documents Zhang or Cheng have produced. More discovery, including electronic discovery, is necessary to test the veracity of Cheng's arguments here that the property at issue is properly deemed "separate" in nature.

## III. ARGUMENT

### A. Cheng has Failed to Exhaust the Required Procedures for Contesting a Bank Levy, Much Less Through a Separate Case.

Cheng's *ex parte* application is procedurally improper on multiple levels.

*First*, although the instant case in which this motion was filed (Case No. 8:25-cv-01553-MRA-JDE) is related to the Zhang Action, it is not the same case. It is not appropriate to file a new case to challenge statutory procedures already underway in the Zhang Action, particularly when a similar motion was previously denied in that Action. (*See* Dkt. 68 in Zhang Action). Additionally, Cheng's *ex parte* is an improper procedural vehicle to challenge Defendant's bank levies. The California Code of Civil Procedure provides the well-known and established claim of exemption procedure for contesting bank levies. Cheng has all along been able to—indeed, she is required to—follow the well-established procedures under California Code of Civil

Procedure sections 703.520 and 720.010-720.800, for contesting a bank levy. *See* FED. R. CIV. P. 69 ("A money judgment is enforced by a writ of execution...The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located..."); *see also Imperial Bank v. Pim Elec., Inc.*, 33 Cal.App.4th 540, 554 (1995) (describing claim of exemption procedure).

Dingfu understands from the U.S. Marshal's Service that Cheng has now submitted a claim of exemption. (Mock Decl. Ex. 3.) Dingfu learned this information today—just hours before filing this Opposition. The claim of exemption process exists for just this purpose, and Cheng should have exhausted it before seeking the Court's involvement.

*Second*, the timing of the *ex parte* is facially unreasonable. Earlier this month, at Cheng's request, Dingfu agreed to accept service of the Complaint to minimize the burden on Cheng to serve Dinfgu in China. (Dkt. 11). Dingfu's reward for that accommodation is an improper *ex parte* application that seeks to adjudicate the case before Dingfu has even appeared and answered, based entirely on Cheng's self-serving characterizations of selected "evidence," and without any discovery on her claims. Neither Dingfu nor its counsel were personally served with this application, in violation of Local Rule 5-3.2.[1]

**B. <u>Cheng has Not Satisfied the Standard for *Ex Parte* Relief</u>**

*Third*, Cheng has not satisfied the standard for *ex parte* relief. The Court's *ex parte* procedures are clear. As stated on this Court's website ("Judges Procedures"), Cheng was required to demonstrate: (1) that her case "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) that she is "without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co.*

[1] To avoid further disputes, Dingfu ultimately agreed to waive personal service in exchange for the full court day to which it was entitled to respond to the *ex parte*, but Dingfu should never have been placed in this position.

*v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). Cheng is not entitled to the *ex parte* relief she requests because she failed to demonstrate irreparable harm, and Cheng is responsible for manufacturing the purported crisis that she argues requires extraordinary *ex parte* relief.

Cheng's *ex parte* is the third attempt requesting that the Court impede Dingfu's ability to collect on its judgment entered in the Zhang Action. As the Court will recall, in the Zhang Action, on February 27, 2025, Zhang filed an *ex parte* application for an administrative stay of execution. (Dkt. 51 in Zhang Action). The Court denied that *ex parte* because Zhang failed to meet with the standards set out in Federal Rule of Civil Procedure 62. (Dkt. 68 in Zhang Action). Additionally, on June 27, 2025, Zhang filed a motion to quash the original writ of execution and levy. (Dkt. 122 in Zhang Action). The Court expeditiously struck the motion to quash because of Zhang's failure to comply with the Court's rules. (Dkt. 124 in Zhang Action). Zhang never refiled his motion. Now, Cheng has filed a similarly imprudent and procedurally deficient *ex parte* to bypass the claim of exemption procedure set out in the California Code of Civil Procedure. The Court should reject this latest haphazard attempt to disrupt Dingfu's ability to collect on the judgment.

There is no emergency and no "crisis" warranting *ex parte* relief here. The Court's involvement is not required. Moreover, the fact that she filed a claim of exemption shows that she knows the required procedure. Given that, this Application should never have been filed. At any rate, there is no reason for the Court to consider this *ex parte*.

Cheng was aware of the claim of exemption procedure as instructions are provided in the Notice of Levy she submitted as an exhibit to her *ex parte*. (*See*, *e.g.*, Dkt. 12-8 [Ex. 6]). For the same reason, there is no irreparable prejudice. Not content to just follow the rules, Cheng burdens the Court and Defendant with irresponsible and wasteful motion practice.

Cheng admits that she is aware of the Notices of Levy mailed by the U.S.

Marshals Office on August 1, 2025. (Dkts. 12-4, 12-5, 12-6, 12-7, 12-8). As explained above, the claim of exemption procedure is the proper means provided by the California Code of Civil Procedure for making such challenges. Cheng's decision not to comply with the claim of exemption procedure demonstrates that any exigency she claims as the basis for her *ex parte* was manufactured by her, which does not meet the *Mission Power* standard. *Mission Power*, 883 F. Supp. at 492.

### C. Cheng Seeks a Preliminary Injunction, But Fails to Acknowledge or Satisfy the Relevant Legal Standard

The Application is also improper because in reality, it seeks a drastic remedy—a preliminary injunction of indefinite duration, preventing Dingfu from taking lawful action to enforce on its judgment. Regardless of how the Application is styled or labeled, that is the relief that Cheng seeks here. Yet Cheng does not even attempt to satisfy the stringent requirements for obtaining such an injunction. Cheng does not even seek a temporary stay; she asks for the stay to last until the case is resolved. As the Court is aware, to obtain a preliminary injunction, Cheng must satisfy the four-factor test under *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). Under *Winter*, plaintiffs seeking a preliminary injunction "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). The party seeking the injunction bears the burden of proof as to each of these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

Cheng does not even attempt to make this showing. If she had tried to make it, she would not have been able to satisfy the test. There is no risk of irreparable harm, because Cheng has always had available to her the standard claim exemption process to avoid bank levies and has actually submitted an exemption request.

She cannot show a likelihood of success on the merits, because she has failed to produce evidence that would support her claim that her bank accounts and other assets are separate property, as opposed to community property that Dingfu may enforce. As shown below in Section IV, she bears a heavy burden to establish that the property at issue is separate in nature. Cheng's factual "support" consists in part of her personal view that the property is her separate property (Dkt. 12 at 9:11-13 ("her position is that no community property interest exists in any of the accounts described in the Notices of Levy"). But Cheng's personal view is not evidence; is subjective, unsupported, and self-serving. It is entitled to no weight. The few documents that Cheng and Zhang have produced are highly suspect, given that Zhang has admitted to fabricating evidence involving transactions with Cheng after Dingfu began this collection action, and falsely backdating signatures to give the false appearance that documents created while this action was pending were in fact created years ago.

The equities favor Dingfu, given the evidence of Zhang's fabrication of evidence, and Cheng's knowledge as JCAE's CFO and the person who supposedly loaned the money to Zhang. And of course, the public has no interest in allowing judgment debtors to hide community property through a bogus evasion scheme.

## IV. CHENG FAILS TO SUBSTANTIATE HER EXTRAORDINARY REQUEST WITH EVIDENCE.

The rules governing marital property in California are both unique and well established. California is a community property state, and a judgment creditor may therefore execute upon community property in its entirety for a debt incurred by either spouse. CAL. FAMILY CODE, § 910(a). All property acquired during a marriage is presumed to be community property and will be treated as such unless it satisfies rigorous exceptions. CAL. FAMILY CODE, § 2581. The burden of proving that marital property is separate rests upon the spouse making that assertion, and the burden must be met by *clear and convincing evidence*. CAL. EVID. CODE, § 662. When the property

is personal, and especially when it is money, the proponent spouse must trace the property back to the moment of its arrival in the marriage, and affirmatively prove that it never lost its separate character, such as by commingling the monies with community property funds and joint bank accounts. *In re Mix*, 14 Cal.3d 604, 611 (1975). Furthermore, all protections for separate property yield to the laws governing fraudulent transfers. CAL. FAMILY CODE, § 851.

Cheng's motion acknowledges none of this: her excruciating burden of proof, her obligation to trace back to its origin each location of funds she now claims to be separate, or this Court's obligation to presume that her assertions of separateness are false. In fact, Cheng's motion does not cite a single legal authority whatsoever, substantive or procedural. It is rhetoric, not a proper application.

And based on what we know so far, Cheng will be unable to meet her burden of proof in this action. Cheng's claims of separateness stem most recently from a marital property agreement she allegedly signed in 2014. (Dkts. 12-1, 12-5.) But a 2014 transmutation agreement is irrelevant to property that arrived later or a bank account that exists without tracing documentation in 2025. We are talking about millions of dollars of subsequently acquired money, not a family heirloom brought to the marriage. Neither Dingfu nor the Court has received any tracing verification of the money in these accounts, merely Cheng's say-so that it is hers. (Dkt. 12 at 9:11-13.)

In fact, Cheng admitted under oath that funds she considers to be separate are routinely deposited into joint checking accounts, commingling them with community property. (Mock Decl., Ex. 1 [Cheng Tr. at 18:17–24]). The only time these monies seem to be "separate" (according to Cheng) is when the family's stiffed creditors show up to collect. Dingfu also suspects that many of these bank transfers are fraudulent, or at least voidable under the Uniform Voidable Transfers Act (UVTA), CAL. CIVIL CODE § 3439 *et seq.*, and Dingfu is entitled to resolve that question during discovery on the merits.

In sum, Cheng seeks the equivalent of a judgment before Dingfu or the Court can investigate the truth of her claims, and before Dingfu has even answered the allegations of the Complaint. Her *ex parte* should be rejected.

## V. SANCTIONS ARE APPROPRIATE

The Court should sanction Cheng for her misuse of the Court's *ex parte* procedures. Cheng has failed to satisfy the legal standards applicable here: both the *ex parte* standards and the well-settled procedures and standards applicable to contesting bank levies. Cheng failed even to cite or apply the Court's own legal standards or the law governing community versus separate property. Cheng's *Ex Parte* is legally and factually baseless, but Defendant has had to expend considerable time and resources to oppose it, forced to appear in a case where it was supposed to be exempt from appearance until early October. Cheng's misuse of the Court's *ex parte* procedure is further evidenced by the fact that she is already proceeding through the claim of exemption process of the California Code of Civil Procedure.

The Court's own Procedures state, "sanctions may be imposed for misuse of *ex parte* applications." This is a clear case of misuse, and the Court should award Dingfu its reasonable attorney's fees.

## VI. CONCLUSION

In sum, we respectfully submit that the Court should:

1. Deny Cheng's *Ex Parte* application. There is no emergency, no irreparable harm, and Cheng has completely failed to acknowledge or satisfy either this Court's own *ex parte* procedures,the well-recognized standards for contesting a levy and has failed to make any procedural or substantive showing that she is entitled to the relief she seeks; and

2. Award Dingfu its reasonable attorney's fees as a sanction for Cheng's misuse of the *ex parte* process.

Dated: August 26, 2025

**ARENTFOX SCHIFF LLP**

By: */s/ Matthew B. Mock*

Matthew B. Mock
Jonathan Judge
Oscar A. Figueroa
Attorneys for Defendant
ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP