MATTHEW B. MOCK (SBN 316380)
matthew.mock@afslaw.com
OSCAR A. FIGUEROA (SBN 313238)
oscar.figueroa@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Tel: 213.629.7400/Fax: 213.629.7401

JONATHAN JUDGE (*Pro Hac Vice*)
jonathan.judge@afslaw.com
**ARENTFOX SCHIFF LLP**
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Tel: 312.258.5500/Fax:312.629.5600

Attorneys for Defendant, Counterclaimant and Third-Party Plaintiff
ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

JULIE CHENG a.k.a. JULIE XINGZHOU CHENG a.k.a. XINGZHOU CHENG, an individual,

Plaintiff,

v.

ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP, a Chinese limited partnership,

Defendant.

ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP, a Chinese limited partnership,

Counterclaimant,

v.

Case No. 8:25-cv-01553-MRA-JDE
[Related Case No. 8:23-cv-02059-MRA-JDE]

**ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP'S THIRD-PARTY COMPLAINT**

**(1) California Uniform Voidable Transfer Act: Actual Intent to Hinder or Delay Collection;**

**(2) California Uniform Voidable Transfer Act: Constructive Intent to Evade Collection;**

**(3) Single Enterprise / Alter Ego**

Honorable Mónica Ramírez Almadani
Ctrm: 6A

**REQUEST FOR JURY TRIAL**

JULIE CHENG a.k.a. JULIE XINGZHOU CHENG a.k.a. XINGZHOU CHENG, an individual

Counterclaim-Defendant.

ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP, a Chinese limited partnership,

Third-Party Plaintiff,

v.

PHILLIP LIANG ZHANG, an individual; CENTRAL IRVINE INVESTMENT, LLC, a California limited liability company; THE PHILLIP ZHANG AND JULIE CHENG FAMILY TRUST, a California trust; WILLIAM CHENG, in his capacity as Trustee of the Phillip Zhang and Julie Cheng Family Trust ("Trustee"); and JCAE GROUP, INC., a California corporation,

Third-Party Defendants.

## INTRODUCTORY STATEMENT

Defendant, Counterclaimant, and Third-Party Plaintiff ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP, ("Dingfu") hereby asserts third-party claims against: Phillip Liang Zhang ("Zhang"); Central Irvine Investment, LLC ("Central Irvine"); the Phillip Zhang and Julie Cheng Family Trust (the "Trust"); William Cheng, in his capacity as Trustee of the Phillip Zhang and Julie Cheng Family Trust; and JCAE Group, Inc. ("JCAE") (collectively with Counter-claim Defendant Julie Cheng ("Cheng"), the "Zhang/Cheng Enterprise").

The Zhang/Cheng Enterprise is a single business enterprise, and an alter ego of Zhang. In the related action of *Zhuhai Dingfu Phase I Industrial Energy Conservation Investment Fund, LP v. Phillip Zhang*, No. 8:23-cv-02059-MRA-JDE (the "Enforcement Action"), this Court has recognized and enforced a foreign arbitral award under the New York Convention, and entered an Amended Judgment of $4,798,002.90, plus interest accruing daily, against Zhang.

Discovery in the Enforcement Action has shown that Zhang and Cheng, and the Zhang/Cheng Enterprise, have a net worth that far exceeds the judgment amount, but are engaged in a scheme to evade the enforcement of the Court's Amended Judgment. Zhang and Cheng, and the entities that they control and direct, have transferred assets between and among their various entities to frustrate Dingfu's collection efforts by illegitimately diminishing Zhang's assets and moving them into Cheng's possession or entities controlled by Zhang and Cheng. Cheng then claims, falsely, that all marital property is her separate property, and that Zhang has no assets of his own.

This debt-evasion scheme is not a sophisticated one, and Zhang and Cheng's conduct bears nearly every one of the signature elements of a voidable transfer under the California Uniform Voidable Transfer Act. The Zhang/Cheng Enterprise, and the defendants named herein, have unjustly enriched themselves by using this diverted

property to fund their businesses, receiving millions at Dingfu's expense. Zhang and Cheng's conduct has given rise to the liability of the Third-Party Defendants under California's "single enterprise" alter ego doctrine.

Dingfu seeks to have the judgment enforced, including against the Zhang/Cheng Enterprise, and for the Court to enter an order voiding the unlawful transfers that were intended to avoid enforcement.

## THIRD-PARTY CLAIMS

1. Defendant, Counterclaimant, and Third-Party Plaintiff Zhuhai Dingfu Phase I Industrial Energy Conservation Investment Fund, LP ("Dingfu") hereby alleges the following for its third-party claims against Third-Party Defendants Phillip Liang Zhang ("Zhang"); Central Irvine Investment, LLC ("Central Irvine"); JCAE Group, Inc. ("JCAE"); William Cheng, as Trustee of the Phillip Zhang and Julie Cheng Family Trust ("Trustee"); and the Phillip Zhang and Julie Cheng Family Trust (the "Trust") (Zhang, Central Irvine, JCAE, Trustee and Trust, are collectively referred to as "Third-Party Defendants").

## PARTIES, JURISDICTION AND VENUE

2. Defendant, Counterclaimant, and Third-Party Plaintiff Zhuhai Dingfu Phase I Industrial Energy Conservation Investment Fund, LP is a Chinese investment fund that entered into an investment agreement with Phillip Zhang and certain Chinese corporations that he controlled.

3. Third-party Defendant Phillip Liang Zhang the Respondent in the related Enforcement Action. He is the CEO and 100% owner of third-party defendant JCAE Group, Inc. He resides in this judicial district. Cheng is Zhang's spouse, holder of community property, is the CFO of third-party defendant JCAE Group, Inc.

4. Third-party Defendant Central Irvine Investment, LLC is ostensibly the California limited liability company managed by Cheng that conducts real estate investment business. In reality, Zhang and Cheng have unlawfully transferred assets into Central Irvine to shield them from enforcement.

5. Third-party defendant JCAE Group, Inc. is registered as a California corporation. In reality, it is a shell that is owned solely by Zhang, and has only two employees—Zhang and Cheng, who is its CFO. It is undercapitalized, operated out of their home as a sole proprietorship, and owns no significant assets. JCAE is another enforcement evasion device into which Zhang and Cheng transfer funds at will between Cheng, Zhang, the Trust, without observing corporate formalities. JCAE's books and records, and in particular, the documentation of so-called "loans" between the various Zhang and Cheng entities, have been fabricated and falsified.

6. Third-party defendant The Phillip Zhang and the Julie Cheng Family Trust is a California *inter vivos* trust created by Zhang and Cheng in 2012 as a revocable trust. Zhang and Cheng use the Trust as their own piggy bank, frequently "loaning" themselves large amounts from its assets without recourse or commercially reasonable terms, without repaying these loans or properly documenting them. The Trust's assets are frequently and routinely commingled or otherwise treated as assets of JCAE, Cheng, Zhang, and/or Central Irvine.

7. Third-party defendant William Cheng is a California resident and the 87-year-old father of Cheng. He is in poor health, is unable to speak English, and was abruptly (and allegedly) installed as Trustee of the Trust in January 2025, at the time this Court granted Dingfu's Motion to Enforce in the Enforcement Action. Cheng and Zhang's appointment of him as Trustee, and their contemporaneous transfer of millions of dollars of Orange County real estate into his control, was done with the intent to hinder and delay Dingfu's enforcement of its judgment. William Cheng is named solely in his capacity as Trustee.

8. This Court has subject-matter jurisdiction over these claims pursuant to Federal Rule of Civil Procedure 14 and pursuant to diversity jurisdiction, because Dingfu is a citizen of a foreign country and all other parties are citizens of California.

9. The amount in controversy exceeds $5 million.

10. The Court has personal jurisdiction over the Third-Party defendants

because all of them reside and/or do business in this judicial district.

11. Venue is proper in this judicial district because a substantial portion of the events giving rise to this cause of action occurred in this judicial district, and because all defendants reside and do business in this judicial district.

## FACTS COMMON TO ALL COUNTS

### I. DEBTS NOT PAID AND A SINGLE ENTERPRISE OF EVASION.

#### A. The Underlying Debt and Siphoning of Repayment from China

12. In 2016, Zhang, Dingfu, and other parties not relevant here entered into the Capital Increase Agreement and Shareholders' Agreement, whereby Dingfu agreed to invest RMB 20 million in Zhang's company Q-Capital.

13. Thereafter, Dingfu paid Q-Capital RMB 20 million pursuant to the Agreements, fully satisfying its investment obligations.

14. At then-prevailing exchange rates, Dingfu's investment in Zhang's company amounted to about $3 million in United States dollars.

15. During this same time, Zhang and Cheng completed improvements on their property at 22762 Channel View property in Laguna Niguel, which would become their residence, and paid off their large construction loan to Wells Fargo, a loan that had been outstanding since 2014.

16. Q-Capital then failed to perform under the relevant agreements, triggering Zhang and Q-Capital's obligation to buy out Dingfu's investment, the so-called equity repurchase obligation.

17. The parties then negotiated an amendment to the original agreements, entering into the Supplementary Agreement I and II. In those supplementary agreements, Zhang essentially received a payment plan.

18. Zhang and his company Q-Capital agreed to repay the RMB 20 million investment in three installments through 2020.

19. Zhang promised to pay the remaining installments if Q-Capital did not, but in reality did not intend to make those payments. Instead, Dingfu learned facts in

the Enforcement Action demonstrating that Zhang intended to return to the United States with his wife and take his gains from the Dingfu transaction with him, to fund his and Cheng's investments and businesses here.

20. The initial installment of 3 million RMB (about USD$435,000) was paid. But Zhang and the entities he controlled failed to pay the remaining installments of RMB 17 million. At then-prevailing exchange rates, the 17 million RMB that Zhang refused to pay back to Dingfu was worth approximately $2.5 million US dollars. Zhang wrongfully withheld the RMB 17 million he had promised to pay to Dingfu.

21. In or about the same time that Zhang failed to make the required payments to Dingfu, Zhang and Cheng purchased a residential real estate property at 145 Linda Vista, Irvine, California, for approximately $1.265 million. On information and belief, at least a portion of the purchase price consisted of the funds that Zhang unlawfully withheld from Dingfu.

22. Zhang and Cheng purchased the 145 Linda Vista property as "community property with right of survivorship."

23. Zhang and Cheng made significant improvements to the 145 Linda Vista property, later describing it as "highly upgraded." On information and belief, at least a portion of the cost of the improvements consisted of the funds that Zhang took from Dingfu under false pretenses. Zhang and Cheng then listed it for rent in July 2020 for approximately $5,000/month.

24. Despite multiple requests from Dingfu, Cheng and Zhang have failed to produce any records showing any source of funds used to purchase the 145 Linda Vista property.

25. When Cheng and Zhang purchased the 145 Linda Vista property, they reported income on their federal tax returns that was insufficient to account for their living expenses and for the purchase of the new property.

26. In October 2024, while Dingfu's Petition to Recognize and Enforce was

fully briefed and awaiting ruling, Zhang and Cheng sold 145 Linda Vista for $2,450,000. The funds realized from the sale are not reflected in any bank accounts held by Zhang.

27. Shortly after failing to make the third installment payment required under the Supplementary Agreements, Zhang and Cheng purchased a unit at the Grand Monarch resort in Dana Point, California, for over $1.5 million. On information and belief, at least a portion of the purchase consisted of the funds that Zhang unlawfully withheld from Dingfu.

28. Despite multiple requests from Dingfu, Cheng and Zhang have failed to produce any records showing any other source of funds used to purchase the Grand Monarch property.

29. Shortly after failing to make the third installment payment required under the Supplementary Agreements, Zhang and Cheng purchased a property at 191 Pin Lane, Lake Forest, CA. On information and belief, at least a portion of the purchase consisted of the funds that Zhang unlawfully withheld from Dingfu.

30. Thereafter Zhang and Cheng quickly “flipped” and re-sold the 191 Pin Lane property, realizing a substantial profit from the funds unlawfully retained from Dingfu.

**B. Zhang has Fabricated and Falsely Backdated Records**

31. In the Enforcement Action, Zhang produced records in discovery that appeared to show payments for capital contributions to Zhang’s business, JCAE Group. The records were offered by both Zhang and Cheng in an attempt to show legitimate transfers of money for a valid business purpose.

32. But Zhang was forced to admit in his debtor examination to fabricating those records, and then backdating them, in some cases by years, with the obvious intent to make them appear as though they had been created before the Zhang Action began.

33. Specifically, Zhang and Cheng testified that these large payments were

merely "loans" made by Cheng or the Trust to Zhang and/or JCAE Group.

34. Zhang then created false "Capital Contribution" documents that purported to document these loans as though they were legitimate capital contributions.

35. Zhang admitted in his debtor examination that the capital contribution documents he produced did not exist before that case. Zhang created them only after Dingfu served discovery requests in the Zhang litigation in early 2025.

> Q. Now, the rest of the Capital Contribution Statements that are reflected in Exhibit 8, and that is through -- Bates 058 through 062, these were all created by you in or about the time that you received our document requests in this litigation; is that right?
>
> A. **Yes.**

36. Zhang testified that he used records and information held by Ms. Cheng, JCAE's CFO, to create the records in 2025.

37. He then falsely backdated them to 2021 and 2024, including falsifying the dates on which they were supposedly signed, to make it appear as though they were created and signed at the time of the supposed earlier capital contributions. He admitted this:

> Q. It was backdated?
>
> A. **Okay. Yeah.**
>
> Q. And that's true of every Capital Contribution Statement that is shown here in Exhibit 8; correct?
>
> A. **Correct.**

38. Even more telling, Zhang then admitted that JCAE's financial books and records—which are the province of the company's CFO, Cheng—did not show that JCAE received any capital contribution in 2021, the date when the falsified and backdated documents purportedly showed a very large loan from Cheng for a capital contribution.

39. While that case was pending before this Court, Cheng supposedly made several additional loans, totaling an even larger amount, to Zhang, again to be used as capital contributions to JCAE Group. But JCAE's books and records showed contributions of only about one-fifth the amount shown on the Capital Contribution Statements, a major discrepancy that Zhang could not explain.

### C. The Trust is an Alter Ego for Cheng and Zhang and is Part of the Single Zhang/Cheng Enterprise

40. The Trust was created in 2012 as a revocable trust, with Cheng and Zhang as the Settlors and Trustees.

41. Zhang and Cheng claim to have converted the Trust into an irrevocable trust in 2019, the same year that Zhang wrongfully withheld the funds from Dingfu and the same year that Zhang and Cheng bought the 145 Linda Vista property. It is well settled that a trust created for the purpose of defrauding creditors is illegal and may be disregarded.

42. There is considerable doubt as to whether Cheng and Zheng actually converted the trust into an irrevocable trust. Cheng and Zhang have refused to produce any trust-related documentation created before enforcement efforts began in 2025 to support that assertion.

43. In a 2020 filing with Wells Fargo to obtain a bank loan, Zhang and Cheng expressly referred to the Trust as "revocable" in nature.

44. The Trust never filed tax returns until the 2024 tax year, i.e., after the Enforcement Action was commenced.

45. Until the 2024 tax year, all income and other financial information regarding the Trust was reported on Zhang and Cheng's personal joint tax return.

46. On information and belief, the Trust did not obtain a taxpayer identification number until after the Enforcement Action was commenced.

47. At all times relevant herein, Zhang and Cheng dominated and controlled all decisions of the Trust.

48. Cheng claims to have made numerous "loans" from the Trust to Zhang and to JCAE. But as described above, documents regarding several of these loans have been fabricated and falsely backdated to make them appear legitimate. In reality, these are not loans but simple cash transfers and commingling of assets between Cheng, Zhang, JCAE, Central Irvine, and the Trust.

49. The vast majority of these loans have not been documented or have not been sufficiently documented.

50. For example, Julie Cheng made at least 65 "loans" from the Trust to herself between 2022 and 2024 alone. These loans are not documented with promissory notes or any other similar written instrument evidencing a debt or an obligation to repay it. Only a single (purported) payment has been made to pay back the Trust for the "loans" it made.

51. According to the (suspect) documentation, many of the loans were made to pay the mortgage or property taxes at the 145 Linda Vista property, showing commingling of Trust assets with Zhang and Cheng's personal assets (the Linda Vista Property was deeded to Zhang and Cheng as joint community property).

52. Even then, there are no electronic records of these loans; the only evidence of their existence is a one-line handwritten entry in a ledger.

53. Until January 2025, only Zhang and Cheng were involved in making decisions for the Trust. This included deciding what assets and real estate to acquire, what investments to make with the Trust's assets, when and on what terms to loan money to Cheng, when and on what terms to loan money to Zhang, and when and on what terms to loan money to JCAE Group.

54. In January 2025, at or about the time Judgment was entered in the Enforcement Action, Cheng and Zhang allegedly and abruptly resigned as Trustees of the Trust and made the decision to install Cheng's father, William Cheng, as Trustee. William Cheng is 87 years old and in poor health.

55. The designation of William Cheng as the new Trustee was a sham and

intended to delay and hinder Dingfu's collection efforts.

**D. JCAE Group Inc. ("JCAE") is an Alter Ego for Cheng and Zhang and is Part of the Single Zhang/Cheng Business Enterprise**

56. For at least the last five years, JCAE has been merely a shell. It has ceased to observe corporate formalities, has commingled assets with Cheng, Zhang, and the Trust, has had essentially no income, and has suffered net operating losses every year.

57. For at least the last five years, JCAE has had only two employees: Phillip Zhang and Julie Cheng. In JCAE's mandatory filings with the California Secretary of State, Zhang is identified as the President and CEO; Cheng is identified as the Chief Financial Officer.

58. JCAE has failed to observe corporate formalities.

59. JCAE is listed as a California corporation, but Zhang testified under oath that JCAE has never issued any shares or stock.

60. Zhang claims to be the sole shareholder and 100% owner of JCAE but he testified under oath that he possesses no stock or shares in JCAE.

61. JCAE does not hold any annual or shareholder meetings and has not held any such meetings in at least the last five years.

62. Other than the required annual filing with the California Secretary of State, JCAE has not issued any annual reports or financial reports in the last five years.

63. JCAE ceased to have any physical offices at least five years ago. The business operates out of Zhang and Cheng's residence address at 27762 Channel View, Laguna Niguel, CA.

64. However, JCAE falsely lists its existing business address as 4512 Campus Drive, Irvine, CA, on purported loan documents and in its filings with the California Secretary of State.

65. JCAE's financial records are maintained by Julie Cheng on her

personal laptop computer, along with Zhang and Cheng's personal financial records and, on information and belief, those of Central Irvine and the Trust – all the records of the Zhang/Cheng Enterprise.

66. JCAE is dramatically undercapitalized. JCAE's two bank accounts show almost no holdings.

67. If Zhang's and Cheng's statements are credited as true, JCAE owes vast amounts of money to the Trust and to Julie Cheng; in reality, however, these were not loans at all but were transfers of money from the Trust to Zhang.

68. JCAE's financial records and actual financial holdings have unexplained inconsistencies. For example, Cheng, Zhang, and the Trust have produced documents that purport to show loans to JCAE, but the loans are not reflected on JCAE's books, and JCAE's bank accounts likewise do not show transactions or holdings that match the purported loans.

69. Zhang has admitted to fabricating numerous JCAE financial records for purposes of responding to discovery in the Enforcement Action. These fabricated records include supposed "Capital Contribution Statements," which pertain to supposed loans from both Julie Cheng and the Trust to JCAE, and they did not exist before Dingfu's post-judgment discovery was served.

70. For at least the last five years, JCAE has not operated as a corporation under California law; rather Zhang and Cheng have treated it as a device to evade their debts and debt collection efforts, and part of their broader scheme to concentrate all purported liabilities with Zhang or entities superficially held by him, while concentrating all assets with the Trust, Cheng, or entities superficially held by her.

71. In reality, JCAE is part of a single enterprise that consists of Zhang, Cheng, Central Irvine, the Trust, and JCAE.

**E. <u>Central Irvine Investments is an Alter Ego for Cheng and Zhang and is Part of the Single Zhang/Cheng Business Enterprise</u>**

72. Ostensibly, Central Irvine Investments LLC, ("Central Irvine") is a real

estate investment business to purchase and hold commercial and residential real estate investments. In reality, Central Irvine is a shell and merely part of the Zhang/Cheng enterprise.

73. Central Irvine does not file its own tax returns; rather its income is reported on Zhang's and Cheng's personal joint tax return.

74. Income for the properties held by Central Irvine was reported as joint income to Zhang and Cheng on their personal tax returns.

75. All decisions are made by Cheng and Zhang; there are no other members or managers of the LLC.

76. On information and belief, Zhang and Cheng have commingled Central Irvine's assets with those of their personal property and the property and assets nominally held by the Trust.

77. Despite numerous requests from Dingfu, Zhang and Cheng have been unable to produce documentation showing that the assets of Central Irvine are maintained separately from those of Zhang, Cheng, or the Trust.

## II. ALTER EGO AND SINGLE BUSINESS ENTERPRISE LIABILITY

78. Zhang and Cheng are the de facto owners and managers of JCAE, Central Irvine, and the Trust. They control all operations of each of these entities and use these entities to pool and commingle their assets. Rather than observe organizational formalities, they disregard them entirely, as alleged herein, including by routinely and repeatedly transferring money back and forth between the three entities.

79. Cheng is sophisticated in financial matters, holding a degree in Accounting from the University of Minnesota.

80. JCAE has—and for five years has had—only two employees, officers, directors, and managing agents: Zhang (CEO) and Cheng (CFO). It has only one putative shareholder and owner, Zhang. All decisions about this corporation are made by Zhang and Cheng.

81. As to the Trust, from the time it was formed in 2012 until January 2025, when Cheng's 87-year-old father was installed as a sham at the time the Judgment was entered, Zhang and Cheng have controlled all of its assets. They have made all decisions about payments into and out of the Trust.

82. Zhang and Cheng have repeatedly made sham "loans" from the Trust to themselves and to JCAE. These loans are not documented with a promissory note; do not accrue interest, and the borrowing entity or individual does not pay them back.

83. The Trust assets are routinely commingled with non-Trust assets, used to pay non-Trust expenses and expenses for the spouse's community property, like the dozens of loans Cheng made to herself to pay for the mortgage on the couple's jointly owned investment property at 145 Linda Vista, Irvine.

84. Large loans were routinely made from Cheng to Zhang, supposedly for investment into JCAE; from the Trust to JCAE, and from the Trust to Zhang.

85. Central Irvine is entirely controlled by Cheng and Zhang. They make decisions together regarding which properties to acquire.

86. In October 2014, Zhang gave Cheng a special power of attorney for matters pertaining to commercial properties held by Central Irvine, including 16380 Bake Parkway, Irvine and 16390 Bake Parkway, Irvine. If Zhang was not an owner and/or controller of Central Irvine, there would have been no reason for him to grant Cheng this power of attorney.

87. As alleged above and herein, there exists such a unity of interest and ownership between the Trust, Central Irvine, and JCAE that their separate personalities are merged, so that each entity and/or corporation is a mere adjunct of the others. The various entities in effect form a single enterprise controlled entirely by Zhang and Cheng.

88. Allowing the individual actions of JCAE, the Trust, or Central Irvine to be treated as individual actions rather than that of a single enterprise would produce an inequitable result.

89. Zhang, Cheng, the Trust, Central Irvine, and JCAE operate as a single entity and are the alter egos of Zhang and Cheng, and should be treated as such. The Court should order collection and enforcement against all their assets, however held, because they are properly considered to be jointly and severally liable for them.

## III. RELEVANT INDICIA UNDER THE CALIFORNIA UNIFORM VOIDABLE TRANSACTION ACT AND ALTER EGO LIABILITY

90. Cheng's and Zhang's conduct, as alleged herein, displays numerous indicia relevant under California alter ego and the California Uniform Voidable Transfer Act ("CUVTA"). These include, but are not limited to:

91. Dozens or hundreds of self-serving transactions to insiders, including using Trust assets to make dozens of purported "loans" to themselves, which such loans were instead naked cash transfers. Cal. Civ. Code, § 3439.04(b)(1).

92. Retaining possession and control of all assets purportedly held in "irrevocable trust," including both cash or equivalents and real estate assets, and making all decisions regarding use, investment or disposition of those assets. Cal. Civ. Code, § 3439.04(b)(2).

93. Fabricating evidence of sham transactions. Cal. Civ. Code, § 3439.04(b)(3).

94. Concealing such transactions by carrying them out through the Trust or Central Irvine. Cal. Civ. Code, § 3439.04(b)(3).

95. These transactions (including the supposed creation of irrevocable trusts, the real estate transactions, and the other transactions identified herein, among others yet to be revealed in discovery), all occurred after the debtor realized that he could not pay back debts to Dingfu. Cal. Civ. Code, § 3439.04(b)(4).

96. The cumulative effect of the transactions was to transfer all of Zhang's assets to Cheng, the Trust, and Central Irvine. Cal. Civ. Code, § 3439.04(b)(5).

97. Zhang and Cheng both absconded from China to the United States shortly after Dingfu began proceedings to sue Zhang and collect what he owed. Cal.

Civ. Code, § 3439.04(b)(6).

98. Zhang and Cheng removed and concealed numerous assets, including the sale of Zhang's property in China; the sale of the 145 Linda Vista property, the sale of the 191 Pin Lane property, and then transferred and concealed the sale proceeds to other accounts. Cal. Civ. Code, § 3439.04(b)(7).

99. The Third-Party Defendants received no reasonably equivalent value for their shares of the funds and properties transferred, because Cheng and Zhang falsely and without support claimed that all the transactions involved only her separate property. This includes receiving nothing of value in return from the Family Trust. Cal. Civ. Code, § 3439.04(b)(7) and (8).

100. Cheng and Zhang believed or reasonably should have believed that Zhang was incurring and would incur debts beyond his ability to pay as they became due. Cal. Civ. Code, § 3439.04(b)(9).

101. Zhang claims to be insolvent or nearly insolvent. Cal. Civ. Code, § 3439.04(b)(9).

**COUNT I – CALIFORNIA UNIFORM VOIDABLE TRANSFER ACT: ACTUAL INTENT TO HINDER OR DELAY COLLECTION**

*(Against All Third-Party Defendants)*

102. Dingfu incorporates the allegations made in the preceding paragraphs as if they were set forth fully herein.

103. Cheng and the Third-Party Defendants transferred property with the intent to hinder, delay, or defraud Dingfu, making it more difficult for Dingfu to collect monies that it was owed.

104. These transfers include:

a. Purchasing 145 Linda Vista, Irvine;
b. Selling 145 Linda Vista, Irvine;
c. Dispersing the proceeds from the sale of 145 Linda Vista to evade collection efforts;

d. Purchasing a unit in the Monarch Bay resort, Dana Point;

e. Purchasing 191 Pin Lane, Lake Forest, CA;

f. Selling 191 Pin Lane, Lake Forest, CA; and

g. Dispersing the proceeds from the sale of 191 Pin Lane to evade collection efforts.

h. Attempting to convert the Family Trust, and thereby all its claimed assets, into an irrevocable trust.

105. Zhang incurred debts to Dingfu with the intent of hindering, delaying, or defrauding Dingfu, making it more difficult for Dingfu to collect payment.

106. The conduct described above was a substantial factor in causing and continuing to cause financial harm to Dingfu.

107. Some of the Third-Party Defendants produced evidence of their individual holdings, financial structures, and financial transactions to Dingfu within the past calendar year in response to post-judgment discovery in the Enforcement Action.

108. This information had not previously been provided to Dingfu.

**COUNT II – CALIFORNIA UNIFORM VOIDABLE TRANSFER ACT: CONSTRUCTIVE INTENT TO EVADE COLLECTION**

*(Against All Third-Party Defendants)*

109. Dingfu incorporates the allegations made in the preceding paragraphs as if they were set forth fully herein.

110. As alleged above, Dingfu received an Amended Judgment in its favor and against Zhang.

111. Zhang has not satisfied the Amended Judgment against him in favor of Dingfu, creating a rebuttable presumption of insolvency. Cal. Civ. Code, § 3439.02(b).

112. The value of Zhang's debts has been greater than the amount of his assets for several years.

113. Cheng and the Third-Party Defendants transferred real and personal property between themselves and others, without receiving reasonably equivalent value in exchange.

114. These transfers include:

a. Purchasing 145 Linda Vista, Irvine;
b. Selling 145 Linda Vista, Irvine;
c. Dispersing the proceeds from the sale of 145 Linda Vista to evade collection efforts;
d. Purchasing a unit in the Monarch Bay resort, Dana Point;
e. Purchasing 191 Pin Lane, Lake Forest, CA;
f. Selling 191 Pin Lane, Lake Forest, CA; and
g. Dispersing the proceeds from the sale of 191 Pin Lane to evade collection efforts.
h. Attempting to convert the Family Trust, and thereby all its claimed assets, into an irrevocable trust.

115. Zhang incurred his debts to Dingfu while intending, believing, or when he reasonably should have believed that he would not be able to pay them back when due.

116. The conduct described above was a substantial factor in causing and continuing to cause financial harm to Dingfu.

**<u>COUNT III – SINGLE ENTERPRISE / ALTER EGO</u>**

*(Against All Third-Party Defendants)*

117. Cheng and the Third-Party Defendants have a unity of interest and ownership to the extent that they lack truly separate identities and are properly treated as alter egos of Zhang.

118. This unity of interest and ownership is indicated by, but not limited to:

a. The commingling of funds and assets between the Third-Party Defendants.

b. The Third-Party Defendants treat each other's assets as their own, but not their liabilities.

c. The Third-Party Defendants have operated from the same physical location at all relevant times.

d. The sole employees or representatives of the Third-Party Defendants have been Zhang, Cheng, or their family members.

e. Inadequate capitalization and insolvency.

f. Failure to follow organizational formalities, including, but not limited to, issuing required shares of stock, holding shareholder / annual meetings, issuing required reports, maintaining separate records, properly accounting for financial transactions, obtaining loans on commercially reasonable terms, and operating themselves in their own best interests or the best interests of their beneficiaries as opposed to the interests of other Third-Party Defendants.

g. The Third-Party Defendants have a unity of financial interest: maximizing their collective assets and minimizing recourse for creditors of Zhang and Cheng.

h. Central Irvine, JCAE, and the Family Trust were created by, operated by, and always dominated by Zhang and Cheng, existing to serve the interests of the Zhang/Cheng single enterprise.

119. Failing to recognize the singular nature of the Zhang/Cheng enterprise would promote injustice and lead to an inequitable result. The interests of justice require that all Third-Party Defendants be held jointly and severally liable for the debts of one another.

120. The conduct described above was a substantial factor in causing and continuing to cause financial harm to Dingfu.

**PRAYER FOR RELIEF**

WHEREFORE, Dingfu respectfully prays for judgment, jointly and severally, against Third-Party Defendants Phillip Liang Zhang; William Cheng as Trustee of the Phillip Zhang and Julie Cheng Family Trust; the Phillip Zhang and Julie Cheng Family Trust; Central Irvine Investment LLC; and JCAE Group Inc., and for the Court to award the following relief:

1. Compensatory damages sufficient to make Dingfu whole for all of Cheng's and Third-Party Defendants' unlawful actions;
2. An order declaring the transactions identified in Paragraphs 104(a) through (h) void under the UVTA and directing turnover of those amounts and assets to Dingfu, as well as all property of the Trust;
3. An order directing a judicial sale of the assets of Central Irvine Investment and JCAE Group Inc., as necessary, to satisfy the judgment;
4. An order attaching the accounts receivable of JCAE Group, Inc. and Central Irvine Investment LLC;
5. Appointment of a receiver, the third-party defendants' expense, to ensure the efficient and orderly collection of funds and assets sufficient to fulfill the foregoing orders;
6. An award of Dingfu's reasonable attorneys' fees incurred in: (a) enforcing the Judgment and Amended Judgment in the Enforcement Action and (b) this action;
7. Prejudgment and post-judgment interest at the maximum legal rate;
8. Costs; and
9. For such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

**REQUEST FOR JURY TRIAL**

Dingfu requests a trial by jury of all issues so triable.

Dated: October 10, 2025

**ARENTFOX SCHIFF LLP**

By: */s/ Matthew B. Mock*

Matthew B. Mock
Jonathan Judge
Oscar A. Figueroa
Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff
ZHUHAI DINGFU PHASE I INDUSTRIAL ENERGY CONSERVATION INVESTMENT FUND, LP